May it please the Court, counsel. My name is Michael Filippovich. I'm an assistant federal defender with the Federal Defender's Office for the Western District of Washington. With me at counsel table is research and writing attorney Vicki Lye, who is instrumental in writing the briefs in this case. This case involves a prosecution of my client, Michael Lewis Clark, with two counts of violating Title 18 United States Code Section 2423C, which makes it a crime for a U.S. citizen or a permanent resident alien to travel in foreign commerce and engage in illicit sexual conduct. The statute, as interpreted by the government and as applied to Mr. Clark, purports to regulate the channels of commerce. However, as interpreted by the government and as applied to Mr. Clark, it does not require any kind of regulation of the channels of commerce. It does not require any unlawful intent or purpose on Mr. Clark's part or any citizen's part during or before the time the citizen or permanent resident alien is in the channel of commerce. It also does not have an element, any movement of an item, a commodity, or a victim in the channel of commerce. And it does not seek to eliminate, under their interpretation and as applied in this case, any impediment to the use of the channel of commerce. There is, frankly, nothing like this statute anywhere in the Federal Criminal Code that I could find or that the government could find purporting to regulate the channels of either interstate or foreign commerce where it simply doesn't do so. And it's primarily for that reason that we think, it's our view, that this statute, as interpreted by the government and the lower court, is beyond the outer limits of Congress's power to regulate the channels of commerce, particularly the one prong of the channel of commerce, the channels of commerce prong. You know, this is definitely a sui generis case. Have you found any circumstance where any court has struck down foreign commerce power? Your Honor, I haven't found a single case involving a criminal statute where the Supreme Court has addressed this issue. I have not found any criminal statute which has been struck down under the foreign commerce power. But on the other hand, there are no statutes that we have, that either side has found, which purport to regulate the channels of commerce, but really just use the fact that a citizen moved in the channel of commerce as a jurisdictional hook. Well, I mean, the one statute that came to my mind when I first read this is, of course, the Foreign Corrupt Practices Act. Now, I recognize that doesn't rely on an airplane getting the person from the U.S. to the foreign country to do the bribe. But it seemed to me to have some analogy because it is really the ability to criminalize conduct that takes place in a foreign country with a foreign citizen. And the criminalization, of course, is done by Congress. But, I mean, that's the only one I could think of. If I'm thinking of the same statute, and I'm not, I'm actually not quite sure I'm thinking of the same statute, but the Court is identifying, if this is a statute that involves a business practice in a foreign country. It does. It involves, generally involves, you know, businesses who are listed in a certain category with the SEC. Then it would seem to me that that would be a statute that would not be, was not passed or should not be analyzed under the channels of commerce, the ability to regulate the channels of commerce prong, but rather under the prong of whether it affects foreign commerce. And I think under, and it also, that's a purely commercial aspect of activity in a foreign country. It's a U.S. business or U.S. business person acting in a foreign country. It would seem that the government's power would be the greatest there. You raise a good question about the substantial effects test. I have two thoughts about that that I'm interested in hearing from you. One, should that same test apply in foreign commerce like it does in interstate commerce? That's one question I have. And then the second is, even though the district court didn't go there, it still seems to me that it's on the table for consideration. And I'm interested to hear your thoughts as to why it wouldn't meet that test. Well, first, it would be our view that it should not be on the table for consideration where Congress has expressed its intent to base its jurisdiction in this case on a channels of commerce theory. They use the channels of commerce language, the travel language. It's within a broader statute that historically has been a travel act type of statute, the Mann Act. And I think the old statute because the old statute was not effective. Is that right? Well, they – Was that the reason for changing? Well, they claim that it would be more – I can't say it was not effective. The claim was that – That it would not get any convictions under that statute, so therefore, let's change it? Well, according to the materials that were submitted that I saw, the government claimed that it was more difficult to get a conviction if you had to prove a purpose or intent to engage in this activity. But I did not see anything that – any evidence that they actually lost cases or lost prosecutions or didn't bring particular prosecutions because of this purported – Well, they weren't bringing any. I'm sorry, Your Honor? They weren't bringing any prosecutions under the old statute. They couldn't win them. Or they just felt it was too hard and they didn't want to put the energy into that prosecution. And even if that were the case, even if it was more difficult to bring a prosecution under 2423b, the court – the Congress has to first find a basis upon which it has the power to pass this statute. It shows the channels of commerce prong, and in choosing that prong, I think the case should be analyzed under the case law that applies. And I think we don't have much case law in this area. We do have circuit law, the Breedemist case. We have the Cummings case, which involves the international kidnapping statute. Since you brought that up, isn't that another one of the statutes that is – where it was a regulation of commerce? We were searching for statutes that regulated commerce. That's certainly one, isn't it? Those are circuit opinions, yes. And they – but those – both of those statutes were very – That was a Ninth Circuit opinion. I'm sorry, Your Honor? It was also a Ninth Circuit opinion. Which carries some weight here in this court. In any event, those cases both hinged on something actually affecting the channel of commerce. Both of those cases, if I recall correctly, require that there be a purpose or an intent or that there be some impediment to the use of the channel of commerce. That's where this statute fails. Well, this would be the flip side. In one of those, maybe it was Cummings, where the kid gets retained in some country, the court said, well, you know, if he's kind of kidnapped, so to speak, and retained in that country, then he can't get back on the plane and come home to the U.S. This statute does the opposite. It says you're using foreign commerce to facilitate this conduct by flying overseas and then engaging in sex tourism or these illicit sexual acts. It doesn't require that. In fact, under this statute, and I think under the position that government has taken below in this and another case, a U.S. citizen, frankly, could have flown or taken a ship to a foreign country 10 years ago and be living there the entire time. And if he or she commits this crime in the illicit sexual conduct in a foreign country now, they're still guilty of this crime, even though the channel of commerce really did nothing to facilitate that crime. Well, we don't know if that would be applied in that way, do we? If within the statute of limitations, if the traveling and commerce didn't take place within that period of time, I doubt that that would be prosecuted 10 years later or could be. Well, that's not our case. The government has in the past taken the position that they could prosecute those cases. They have, in fact, prosecuted a case, another case that's now pending before this Court, in which the defendant traveled before the effective date of this statute, and then the sex act was committed after the effective date of that statute. That case was dismissed in the district court and is before the Court now on a government appeal. But that's not the facts of this case. It's our view that essentially what Judge Lasnik did in this case was he looked at cases like Bredemus and Cummings and he said that they were essentially guideposts and that he upheld the statute primarily because there was no Supreme Court case that said he could not uphold it. And our view is that if you look at the Lopez case and the analysis in Lopez, that it's very instructive for how the Court should apply the Commerce Clause analysis here. First, Lopez did one thing. They set out the three different categories of Commerce Clause analysis and then focused in on the one that was at issue there, which was the substantially affects prong. And they found that while the Congress's power to legislate in this area under the Commerce Clause was indeed very broad, there are limits. There are always some limits to Congress's power. And where they found the limit in Lopez was that when the purported basis for the exercise of Commerce Clause jurisdiction is simply not there. In other words, you know, the gun in the schoolyard, you know, frankly has such an attenuated connection to an effect on commerce, then Congress has gone beyond, you know, the 100 years or 50 or 60 years of Commerce Clause legislation. The marijuana that was legal in the State of California, have you had a chance to read that? I read that case briefly this morning. And I think it's consistent. I believe it's consistent with the analysis of Lopez, particularly Justice Scalia's especially concurring opinion. I think it does an excellent job. It wasn't part of the majority that actually on a different ground. Yes, Justice Scalia's opinion was only he was concurring on that basis. But this substantially limits Lopez, don't you think? I don't think it limits Lopez, because what the marijuana case involved was an actual commodity, a marijuana like the crops, you know, the wheat crop or whatever crop you have. And I think in that area, Congress, and it was also part of a broader scheme of legislation. In that area, Congress has the broadest, its broadest powers under the Commerce Clause. In Lopez, you were dealing with a firearm in a schoolyard. And the arguments that somehow that substantially affected commerce were quite attenuated and quite a stretch. And the courts said, well, we're just not going to let this go that far. I think that's what we have here. I mean, nothing is happening in the channels of commerce here. There's not a bad intent. There's no bad purpose. There's no commodity or contraband being moved. There's no victim being moved. There's no victim being impeded from coming back into the United States. There is a person, though, traveling in commerce to do something that the Congress believes should be stopped. I would respectfully disagree. There is a person that's traveling in commerce. He's not traveling to do something. That implies that he has an evil or a bad or a criminal purpose. This statute does not require that. And that's where this statute is beyond the outer limits of what Congress has the power to do. I say it's beyond the outer limits. I read this race case, the marijuana case this morning, and it's under the substantially affects prong, which you just told me we're supposed to kind of put over here anyway. And it is ‑‑ it really implicates this whole sovereignty and state federalism issue, which we don't have when we go to foreign commerce. So, I mean, I think admittedly we don't have a lot of guideposts as to where you put the fences in this. But why shouldn't Congress be able to say, look, we do not want our citizens getting on an airplane or a ship or any other instrumentality of Congress, of commerce, and going overseas and having illegal sex. We're going to make that a crime. It's our citizen, and we're going to make that a crime. Now, if you're Cambodian, you can do whatever you want. But if you're a U.S. citizen, that's a crime. Why ‑‑ what says that that's beyond Congress's power? Well, Congress has to act within the limits of the Constitution. The Foreign Commerce Clause gives it broad powers. And Congress has to choose. There could be maybe other grounds in the Constitution upon which it can act. It chose this very narrow basis. And ‑‑ Such as the Necessary and Proper Clause or some other clause. Well, it actually ‑‑ well, perhaps the Necessary and Proper Clause. But in this case, it specifically chose the Channels of Commerce basis for jurisdiction. And what we do know is that the Congress's power is not absolute, even in the foreign commerce area. All the cases talk about it having broad power. There are no cases that say it's absolute in the area of foreign commerce. Well, for example, one, it seems to me that if you were to really land hard on another nation's sovereignty, that might be a limit, for example, to foreign commerce. That is one that we're familiar with, correct? Yes. Okay. So if you had to write the rule or the holding in this case from your perspective, what would be the limit on Congress's foreign commerce power that you would have us impose? Well, yeah. The rule I would write is that for Congress to act within the channels prong of the Foreign Commerce Clause, which is the prong that they chose, and these are three distinct analytical vehicles that Congress can choose from, that there must be some interference, impediment with the Channel of Commerce, or it must be some bad purpose or intent that occurs while the person is actually traveling in the Channel of Commerce. Consistent with all of the multitude of statutes that both parties have cited that have been upheld previously involving channels of commerce litigation, and that if Congress seeks to pass such a statute, it must do so under some other basis of the Constitution, which it has not identified. And I think one other feature here under the Constitution is while this Court has to respect Congress and its decisions, I think the Court also should respect Congress's ability in the first instance to identify the jurisdictional basis upon which it chooses to act. Which were the three? You said there were three possibilities and they chose three guys from commerce. The one under Lopez, one is regulating the instrumentalities of foreign commerce. Secondly is an activity that substantially affects interstate or foreign commerce. And third, which is this case, is regulating the channels of commerce, which is between here and arriving on the foreign soil. How do we know that it wasn't also concerned with the effects on commerce? Well, there's absolutely nothing in the legislative history suggesting that. There's no ñ not only are there not findings in this legislative history, there's not even any extensive discussion in this statute that that's what they were seeking to address. And, in fact, I think if you look at the way the government has argued this and the way the district court approaches it, all the parties have treated this as purely a channels case. And it's ñ and the language they use. It's classic channels, regulation of channels of commerce language, travels in foreign commerce, travels in interstate commerce. When you're talking about it being foreclosed by the Constitution, don't we consider whatever constitutional powers there are that could foreclose it and whether they're valid? Well, I think if the Court is looking at other constitutional grounds, my first position on that would be that Congress should be the one to identify that in the first instance. Because perhaps they wouldn't want to use that particular power to pass this statute. For example, arguments have been made ñ that if the statute passed, wouldn't they ñ they would be concerned that their statute be valid. And so if we're saying that it is invalid because of the Constitution, don't we look at all of the possibilities that it would be valid? I would respectfully disagree because I think Congress may have policy reasons for not wanting to pass a statute. For example, under the treaty power. Because that may put obligations on the United States in addition to passing this criminal statute. I guess the question I have on that is when we, you know, trying to find the language, the constitutional authority statement going to the report, it basically just cites the Commerce Clause generally. So these variations of what the Commerce Clause includes seem to me in part to be kind of court-created rather than constitutionally created. Would you agree? Well, I think the framework has been created by the courts, the three different prongs. But I also believe there's case law that says Congress is presumed to have ñ be familiar with particularly Supreme Court opinions and the framework that it's ñ that it's created. All right. I think we'll hear from the government at this point. Ms. Bruner. Thank you, Your Honor. Good afternoon. May it please the Court. My name is Helen Bruner. I'm here representing the United States today. And with me in court, although not at counsel table, is Susan Dorman and John Malegin who handled the case below and are also on the brief. The issue before this Court is whether the Constitution provides Congress with the authority to enact a statute to punish the conduct of a 68-year-old American citizen with continuing ties to the United States who travels to Cambodia and within that country exploits ñ sexually exploits two homeless children ages 10 and 13. And I think the answer for this Court is yes. Congress can enact that statute. This Court asked counsel some questions about the powers of Congress in enacting legislation in the foreign policy arena. And I would point this Court to a statement from the Supreme Court in the United States v. Curtis Wright Export Corporation. In that case, the Supreme Court said the broad statement that the Federal Government can exercise no power except those specifically enumerated in the Constitution and implied powers as are necessary and proper to carry into effect the enumerated powers is categorically true only with respect to internal affairs. And it's the government's position, Your Honor, that it is because Congress has much broader powers with respect to foreign policy and foreign commerce that it can enact this statute. Are there any limits to the foreign commerce clause? Your Honor, I would suggest to the Court that if there are, we haven't determined them yet. First of all, there are no cases that have addressed that. So to the extent that we look to the courts to decide the limits, they are not there. I don't believe they're also in the Constitution. And I guess I would suggest again that the Court look to the Curtis Wright Export case for some historical discussion, because it seems to me that the issue here is when Congress legislates external to the United States, even when it involves its own citizens abroad, it is acting in the area where in the international community and must have the same powers as any other country in dealing with the other country, treaty rights, and its own citizens. When it's acting, when Congress is acting internally, we are then faced with the separation of powers and the powers of the states. And it's for that reason that Congress has or the Constitution gives enumerated powers to Congress for legislation purposes and limits the powers of Congress and what it can do, because the states traditionally have dealt with matters completely internal to the states. And I think that is a very big distinction here. This is a situation where Congress is regulating solely conduct occurring outside the United States by its citizens. You're saying then if it affects morality, that's the same as affecting commerce? Well, Your Honor, I think it affects. Yes or no? I think it affects both. So yes to your question, but I don't think that's exclusive. Where does morality enter into the Constitution? Well, Your Honor, I think that we all agree it's immoral, but it's horrible. It should be stopped. But the question is, can you – does this statute stop it legally? Well, I would point the Court to respond, Judge Ferguson, to your question about morality and issues of whether or not the Constitution allows Congress to legislate in this arena. I would point to the – I believe it's pronounced Caminiti case from the Supreme Court, the white slave case. The immorality happening in France, for example, or Cambodia. Excuse me. I did not hear. What gives Congress the right to legislate against immorality that happens in Cambodia? Your Honor, the – Under this statute. The hook here is that the only individuals to which the statute applies are U.S. citizens and permanent resident aliens. It is the ability of Congress to regulate its nationals and those that claim rights from this government that gives Congress this power. That is certainly a power that's internationally recognized. We have a big fight now in this country, you know, when we interpret the Constitution in accordance with foreign laws. Your Honor, I didn't hear. I apologize. I did not hear the first part of your question. Well, there's a big dispute now, public dispute, about Congress interpreting the Constitution in accordance with what happens overseas. In accordance with federal laws, foreign laws. That's correct. You know, the child, the death penalty case. Do you want us to go back to that again? Your Honor, I think that this is the flip of that. We are not looking at foreign law here. We are looking at U.S. law. We are looking at U.S. law controlling its citizens. It just so happens that the – One question I have, though, is when you were talking before, it sounded like you were going off on the foreign affairs power as opposed to the commerce power. And if you go back to the Constitution, when it talks about commerce with foreign nations, we've now shorthanded that to say foreign commerce, I guess. But it does say commerce with foreign nations. Is the only commerce here the flight on the airplane in this particular case? Your Honor, I think that the commerce here in a broader sense, certainly the traveling from the United States to Cambodia is one aspect of commerce. The other aspect of commerce, then, is to take it one step further, and that is the procuring of the child. And I think it's – both of them can be perceived as commerce in this case. So do you think that since anybody who leaves the United States to go overseas would have to travel in interstate commerce, that we could pass a law that basically says anyone who commits a crime overseas that would be a crime in the U.S. is guilty of the same crime in the U.S.? In terms of the power of Congress to do that, I think the answer is yes, Your Honor. In terms of the wisdom or whether or not Congress would have any interest in doing so, that is an entirely separate legislative matter. I think the interest in doing this here, when one looks at the legislative history, brief as it may be, is to point out that there is international condemnation of this behavior, and furthermore, that there is, I believe, I'm paraphrasing now because I don't remember the exact quote, but there's language in the brief legislative history that talks about other countries blaming Americans and holding Americans responsible for their citizenry. So I think in this context, certainly, there was the authority. In the broader context, for example, whether or not Congress would ever want to prosecute or enact a statute that dealt with theft in a foreign country. It has dealt with murder in the context of murder of an American citizen, of another American citizen in a foreign place, without, I might add, any Commerce Clause hook. What if Mr. Felipe suggested you need to stick with the Channels Clause and you can't, this Court could not alternately look at substantial effects because in his view, Congress didn't go that route. What is your view on that? Well, Your Honor, we obviously argued that this is within the Channels power, but that being said, I think the Court can also look at the substantial effects test. And I have several reasons for that. First of all, as Lopez itself observed, it's sometimes difficult to put a statute in neat little boxes. And while affecting commerce is frequently language that is used to denote cases where we're looking at the substantial effects test and in commerce is frequently used for channels, that's not necessarily exclusively so. And I might point to the child pornography area where we used, where this Court in McCoy and Adams looked at the substantial effects test, but I don't believe the language reads that way. That is affecting commerce. Similarly, in Cummings, there was, in fact, no, if you will, language that would direct the Court at either channels or substantially affect analysis in Lopez. But the problem, I think, comes back to this. When we look at Lopez and we look at the vast majority of cases that we've cited in our briefs that talk about commerce clause regulation, those cases are interstate commerce-driven cases. So they are looking at the situation where courts are trying to interpret the limits, the constitutional limits on congressional authority to regulate those things that might be intrastate. We don't have those issues in a foreign commerce arena. And it is for that reason that I think some of the more narrow constructs just don't fit. I think this is a much broader situation. What if you have somebody who goes to Hong Kong and stays for two and a half years, American citizen doing business over there, flies over there on United Airlines, and then takes a private sailboat to Cambodia? Would they be prosecuted under this statute? Well, Your Honor, this obviously is not that case, but having said that, I think the answer to your question is yes. I think there's two ways that one can – that this Court can look at travel, and I don't think that makes – the fact that there are two ways makes this statute ambiguous lest I leave the Court with that impression. I think this Court can look at travel broadly. That is to say, when an American citizen leaves this country and moves to a foreign country and then remains there for a period of time, that American citizen is in fact continuing to travel, whether or not they are calling it a residence in that country or not. Let me give you an example. Mr. Clark, in this case, certainly intended to be residing in Cambodia, had an apartment there, and lived there over a period of time. He came back to the United States every spring. I believe that's in his own words in the excerpts of record at page 39, or at least it's a declaration filed on his behalf. But the point here is that he was there on a business visa renewed on an annual basis. He was there at the suffrage of the Cambodian government. Whether he thought he was a resident there, he's still an American citizen. He's still dealing with his relationship between these two countries. And he was a traveler. What about – well, let's go back to Mr. Clark. He traveled on a military transport. That's correct. So when I first read that, I wondered, how could that be foreign commerce? Well, Your Honor, I think that certainly that raises a slightly different wrinkle, but it still takes him to the foreign place where he then engages in commerce. But moreover, once he gets to the – I believe that the evidence in this case, although I don't remember where the break is, is that he actually does take commercial flights later, but certainly only after he's left the United States. Do you think there needs to be any temporal connection between the travel and the sex act in order for this statute to be constitutional? No, Your Honor, I do not, or at least in the context of the travel as I described it. I mean, I do think that if you're taking the broad view of travel where that's true no matter how long the individual is outside of the United States, of course there's a temporal connection. But if you're talking about the narrow view that has been argued by the defense, I think the answer is no. I think that that would lead to a couple of nonsensical results, and let me give you an example. Either you're talking about the act needing to take place while the person is either on the plane or the boat or the train, which I don't think is what anyone believes. That's the narrowest. That's the very narrowest situation. Other than that, then you would be trying to define is it, is the temporal connection enough for one day, one week, one month, someone with a return ticket? Thirty years. I think that that may be the problem with the 30 years, and maybe the Court has an issue with respect to the statute of limitations, but I don't think so. We have two weeks here, correct? Isn't that the connection time is about two weeks? No, Your Honor. Or is that a month? I believe the United States on May 1st and arrives, and these acts take place June 28th. Oh, and he goes to a couple of places, so it's two months that he's traveling. Okay. Unless there are other questions? Thank you. Thank you, Your Honor. You may have a minute for rebuttal, if you wish. Thank you. In response to Judge Hugg's question about limiting Congress to the channels prong, I'll point the Court to page 19 of our opening brief, where we have a section that discusses how the Supreme Court has repeatedly emphasized that Congress is aware of the distinction between legislation limited to activities in commerce and an assertion of its full commerce power so as to cover all activities substantially affecting interstate commerce. And it was a citation to a U.S. Supreme Court opinion, U.S. v. American Building Maintenance at 422 U.S. 271. In addition, with respect to the argument made by the government that we can kind of mix and match these different analyses of the three prongs of Lopez, I believe the case of the U.S. Supreme Court case of the United States v. Robertson essentially states that these are three distinct analyses that are to be applied. That's not to say that you can't look at all three in a given case if that's what Congress intended, but I think it's a separate legal analysis under each prong. Thank you very much. The case of United States v. Clark is submitted. I'd like to thank both counsel for your argument. It was also very well briefed.
judges: Hug, Ferguson, McKeown